

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer L. Moss
County Attorney
Wheeler County
Wheeler, Texas

Dear Sir:

Opinion No. O-3166
Re: Where commission for selling
county school land was paid
to county judge out of the
school funds instead of the
general fund, and the present
holder of title to such land
pays the amount of such com-
mission into the general fund
to induce the commissioners'
court to transfer such amount
from the general fund to the
school fund, may such owner
recover the amount so paid?

We have your letter of February 13, 1941, wherein
you request the opinion of this department upon the above
question. The facts submitted in your letter are substan-
tially as follows:

Pursuant to an order of the commissioners' court
of Wheeler County, A. J. Norton, on March 23, 1896, purchased
certain school lands owned by the county for a total consid-
eration of $2,345.70. The order recites that $2,234.00 of
this amount was to be paid into the permanent school fund of
the county, while the balance of $111.70 was retained by the
county judge, J. N. Exum, as his commission for making the
sale.

Forty-five years later, the widow of A. J. Norton
sought a loan from the Federal Land Bank to be secured by
a mortgage on the land. The bank advised her that its at-
torney would not approve title for the loan until the sum of

$111.70, being the sum retained by the county judge as commission, was transferred by the commissioners' court from the general fund to the school fund.

The commissioners' court at first refused to enter an order transferring that amount, but under an agreement with Mrs. Norton whereby she paid the sum of $111.70 into the general fund, consented to do so, and did enter such an order. This order was entered on February 10, 1941.

Shortly thereafter, Mrs. Norton demanded that the commissioners' court return to her the $111.70, contending that her husband had paid the entire consideration at the time of the purchase on March 23, 1896, and that she had been forced because of business necessity to pay that portion of the consideration twice. It is her further contention that the commissioners' court should have entered the order transferring that amount from the general fund at the time of her original request, and that the second $111.70 should be restored to her from either the general fund or the school fund.

Your question: Is the commissioners' court legally bound to return to her the $111.70, which she paid on February 10, 1941, to induce it to enter the order transferring that amount from the general fund to the school fund?

After an investigation of the applicable authorities, including those which you were kind enough to point out in your letter, we have come to the conclusion that the commissioners' court is not legally bound to return this money to her.

Two propositions have been so often stated by the Texas courts that they may be considered settled principles of law in regard to the sale of county school land:

First. County school lands must be sold for a monetary consideration and their sale upon any other consideration than money is absolutely void. Dallas County vs. Club Land & Cattle Company, 95 Tex. 200; 66 S. W. 294; Pulliam

vs. Runnels County, 79 Tex. 363, 15 S. W. 277; and Tomlinson vs. Hopkins County, 57 Tex. 572.

Second. The entire proceeds, and not merely the net proceeds, of the sale of lands granted by the State to the various counties for educational purposes, must be applied to the county school fund. All expenses of making the sale including the amount of the commission paid to the agent for securing a purchaser, must be paid out of the general fund. Matagorda County vs. Casey, (Civ. App. Fort Worth, 1908) 108 S. W. 476, error denied; Gallup vs. Liberty County (Civ. App., San Antonio, 1909) 122 S. W. 291, error denied; Brazoria County v. Padgitt, et al, (Civ. App., Austin, 1913) 160 S. W. 1170, error refused. See also Section 6 of Article VII of the Texas Constitution; Article 2824, Revised Civil Statutes, 1925; and Dallas County vs. Club Land and Cattle Company, supra.

What, then, is the effect upon the title of the purchaser, of a diversion of a portion of the proceeds or consideration from the permanent school fund?

It has been held that a diversion to pay the agent's commission for making the sale, does not render the entire transaction void, but, at most, voidable and subject to ratification by the commissioners' court. Gallup vs. Liberty County, supra; Brazoria County vs. Padgitt, et al, supra.

Retention of the balance of the proceeds for a period of 26 years was held to be a ratification by the commissioners' court. Gallup v. Liberty County, supra.

The case of Brazoria County vs. Padgitt, et al, supra, in our opinion, forecloses any question of the validity of the sale to Norton upon a mere showing that a portion of the proceeds were diverted to pay the commission. Since the facts in that case are strikingly similar to those you have submitted, we shall state this case rather fully. The facts are substantially as follows:

Brazoria County instituted suit to recover 8,499 acres of county school land from the remote grantee of W. H.

Day, the original purchaser. Day claimed the land under a deed executed by E. N. Wilson and A. J. Burke, Jr., as agents of the commissioners' court of Brazoria County.

Wilson, at the time of the sale, was county judge and Burke was one of the commissioners of Brazoria County, and both participated in the meeting of the commissioners' court at which the order appointing them as commissioners to make sale and conveyance of such land was entered. This order provided in part:

"And Ervin N. Wilson and A. J. Burke, Jr. shall be and are hereby authorized to receive and retain reasonable commissions and compensation upon all sales made by them of said lands or any part thereof."

Subsequently, at a later meeting presided over by Wilson and attended by Burke, the commissioners' court entered an order approving the sale to Day. The court received and approved a report of the sale of the land which showed that the land was sold to Day for a total consideration of $3,824.55, of which $500.00 was in cash and the balance secured by a note in the sum of $3,324.55. The order also approved the retention of Wilson and Burke of $382.45 out of the cash payment of $500.00, or 10 per cent of the total sale price, and ordered that the balance of the cash payment in the sum of $117.55 be turned over to the County Treasurer.

Thereafter Wilson and Burke were succeeded as members of the commissioners' court by others, and the new officials presented to the administrator of the estate of Day, who had died meantime, the note for the balance of $3,324.55 due on the purchase price and collected that amount from Day's estate. The fact of presentation and payment of the note was held to be a ratification by the commissioners' court of the sale to Day, curing whatever defects existed in Day's title under the original sale. We quote from the language of the Court:

"It is not contended that Day suggested or induced such misapplication, or in anywise actively participated therein. There was no collusion

as to this between Day and said agents, nor be-
tween Day and the commissioners' court. As the
deed, by reason of its ratification by the com-
missioners' court must be treated as having been
originally made by said court, the question is:
Would the fact, if such was the fact, that Day
knew at the time he received such deed from the
court and paid the purchase money therefor, that
the court intended to misapply a part of the pro-
ceeds, have rendered said deed void? If the
power to sell depended upon the apparent purpose
to which the proceeds were to be applied, the
question must be answered in the affirmative;
otherwise, we think it should be answered in the
negative. * * * * In the instant case the
title was in Brazoria County and it was authoriz-
ed to sell the land in such manner as should be
determined by its commissioners' court. Section
6, Art. 7, Constitution of Texas. Of course,
such sale must be for money, cash or on a credit,
as clearly implied by the manner in which the pro-
ceeds are directed to be invested. When such pro-
ceeds were received by the court, it was its duty
to thereafter invest the same as directed by the
Constitution; but we do not think that its purpose
not to discharge its duty in this respect, even
though such purpose be known to the purchaser,
would deprive the court of the power to sell. In
our opinion, such power did not depend upon the
intention of the court to do its duty in reference
to the proper investment of the funds coming into
its hands by reason of such sale. This case stands
upon a different footing from the cases of Dallas
County v. L. & C. Co. 95 Tex. 200, 66 S. W. 294;
Tomlinson v. Hopkins County, 57 Tex. 572; and Pul-
liam v. Runnels County, 79 Tex. 363, 15 S. W. 277.
In those cases the court had no power to sell for
the consideration received."

As pointed out above, full power of sale being in
the commissioners' court, the conveyance to A. J. Norton was
not rendered invalid by the misapplication of a portion of
the monetary proceeds so long as the sale was for a valid

consideration. And, as is evident from your letter, the commissioners' court of Wheeler County has not, and is not now, questioning the validity of that sale and has been guilty of no act amounting to compulsion, with the object of forcing Mrs. Norton to pay the amount she now wishes to recover.

It is generally held that a voluntary payment made under a mistake or ignorance of law, but with full knowledge of all the facts, or with the means of such knowledge, and not induced by any fraud or improper conduct on the part of the payee could not be recovered back. Galveston County v. Gorham, 49 Tex. 279 (1878); Gilliam V. Alford, 6 S. W. 757, 69 Tex. 267 (1887).

It is, therefore, the opinion of this department, and you are so advised, that the County of Wheeler, is under no obligation to repay to Mrs. Norton the amount which she has paid into the general fund and which the commissioners' court has transferred to the permanent school fund.

Trusting that we have fully answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     *Peter Maniscalco*

Peter Maniscalco
Assistant

PM:ej

APPROVED MAR 14, 1941

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN